UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**  'O'

| Case No. | 2:19-CR-00127-CAS-1 | Date | April 30, 2021 |
|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | |
| Interpreter | N/A | | |

| CATHERINE JEANG | NOT PRESENT | RACHEL AGRESS, NOT PRESENT |
|---|---|---|
| *Deputy Clerk* | *Court Reporter* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant: | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| JOSE MEJIA-NUNO | NOT | X | | JONATHAN OGATA | NOT | | X |

**Proceedings:** (IN CHAMBERS) - DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE PURSUANT TO THE FIRST STEP ACT OF 2018 SECTION 3582(c)(1)(A)(i) (Dkt. 31, filed on December 15, 2020)

The Court finds this motion appropriate for decision without oral argument. See Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. Accordingly, the matter is hereby taken under submission and the May 10, 2021 hearing is removed from the calendar.

## I. INTRODUCTION

Defendant Jose Mejia-Nuno is currently serving a 40-month sentence in the custody of the Bureau of Prisons ("BOP") at Federal Correctional Institute ("FCI") Victorville Medium I for illegal reentry to the United States. As of the parties' filings, defendant has served approximately 74% of this sentence. His current release date is October 22, 2021.

On December 15, 2020, defendant, proceeding *pro se*, filed the instant motion to reduce his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1) ("Section 3582"). Dkt. 31 ("Mot."). Defendant bases his motion on his age, underlying health conditions, and his contraction of COVID-19. The government filed an opposition on March 4, 2021. Dkt. 34 ("Opp."). Defendant filed a reply, with the assistance of the Federal Public Defender's Office, on April 5, 2021. Dkt. 40 ("Reply").

Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.    BACKGROUND

### A. Defendant's Underlying Offense and Conviction

Defendant is a 61-year-old citizen of Mexico without legal status to enter the United States. Opp. at 2. On February 22, 2018, defendant was found in the United States despite having been previously deported. Id. At the time, he was also on supervised release in a different illegal reentry case. Id. By reentering, he violated the terms of that release. Id. at 2–3. On March 25, 2019, defendant pleaded guilty to a single count of being an undocumented alien in the United States following deportation in violation of 8 U.S.C. §§ 1326(a), (b)(1) ("Section 1326"). Id. at 2.

Prior to his offense in this case, defendant had been removed from the United States eight times between 1994 and 2017. Id. at 3. He also had prior felony convictions including: (1) a 1992 conviction for second degree burglary; (2) a 1994 conviction for vehicular theft; (3) a 1996 conviction for grand theft of personal property; (4) a 2008 conviction for receiving stolen property; (5) a 2011 conviction for illegal reentry; (6) a 2018 conviction for criminal threats; and (7) a 2018 felony for receipt of stolen property exceeding $950. Id. at 3. Defendant had also been convicted of numerous misdemeanors, including battery of a spouse and inflicting corporeal injury on a spouse. Id. at 3–4. Many of these crimes had been committed after defendant had illegally reentered the United States, while on supervised release, or while on parole. Id. at 4.

At the time of his sentencing, defendant had a total offense level of 17 and was in criminal history category V. Id. at 4. The presentence report calculated a sentencing guideline range of 46 to 57 months. Id. However, as part of defendant's plea deal, the government moved for a downward departure such that defendant's offense level was reduced to 15 and, as a result, the sentencing guideline range decreased to 36 to 46 months. Id. The Court further reduced the high-end of the guideline range to 43 months in order to ensure defendant was credited for the first three months of his imprisonment. Id. at 5. The Court then sentenced defendant to 40 months' imprisonment. Id. at 5.

### B. Outbreak of COVID-19 and Defendant's Illness

On August 11, 2020, defendant was diagnosed with COVID-19 and placed in quarantine isolation. Mot. at 2. According to defendant's medical records, defendant denied having any symptoms of COVID-19. Dkt. 38, Exh. E ("BOP Medical Records") at 43. He was released from isolation on September 19, 2020. Id. at 14. Defendant reports that, despite recovering from this illness, he "now suffers from anxiety, stress and pains in his joints." Mot. at 2. Defendant also suffers from high blood pressure, type II diabetes, and high cholesterol. Mot. at 14; see BOP

Medical Records at 24–25. Defendant has now received both doses of the Moderna mRNA-1273 COVID-19 vaccine. Dkt. 34-8, Opp., Exh. H (inmate immunization record).

Currently, one inmate and no staff at FCI Victorville Medium I have active cases of COVID-19, BOP, COVID-19: Coronavirus, https://www.bop.gov/coronavirus/ (last visited April 27, 2021), and the government reports that the facility has instituted a range of preventative measures, including vaccinations for all inmates, Opp. at 7–9. According to the Centers for Disease Control and Prevention ("CDC"), the Moderna vaccine, which defendant received, is 94.1% effective in preventing COVID-19 in people "who had no evidence of being previously infected." CDC, Moderna COVID-19 Vaccine Overview and Safety, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Moderna.html (last visited April 27, 2021).

On October 5, 2020, defendant filed a request for compassionate release with the warden of FCI Victorville Medium I. Dkt. 38-9, Opp., Exh. I. Defendant now moves for this Court to reduce his sentence to time served, and to order his immediate deportation pending the conclusion of U.S. Immigration and Customs Enforcement proceedings.[1] Mot. at 3.

### III. LEGAL STANDARD

"A judgment of conviction that includes a sentence of imprisonment constitutes a final judgment and may not be modified by a district court except in limited circumstances." Dillon v. United States, 560 U.S. 817, 824 (2010) (alterations omitted). "Compassionate release provides an exception" to this general rule "in extraordinary cases." United States v. Holden, No. 3:13-cr-00444-BR, 2020 WL 1673440, at *2 (D. Or. Apr. 6, 2020).

Prior to December 21, 2018, "the Court could only reduce a sentence of imprisonment upon a motion of the Director of the Bureau of Prisons[.]" United States v. Esparza, No. 1:07-cr-00294-BLW, 2020 WL 1696084, at *1 n.1 (D. Idaho Apr. 7, 2020). But on December 21, 2018, Congress enacted—and the President signed into law—the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 ("FSA"), "with the intent of 'increasing the use and transparency of compassionate release.'" United States v. Willis, 382 F. Supp. 3d 1185, 1187 (D.N.M. 2019).

---

[1] At one point in his motion, defendant asserts that "[t]his Court should permit Petitioner to complete his sentence on home confinement[.]" Mot. at 11. However, this Court lacks authority to direct where defendant's sentence will be served. United States v. Ceballos, 671 F.3d 852, 855 (9th Cir. 2011) (*per curiam*).

Accordingly, the FSA now "permits defendants to bring their own motions for compassionate release after first exhausting their administrative remedies with the Bureau of Prisons." United States v. Ayon-Nunez, No. 1:16-cr-00130-DAD, 2020 WL 704785, at *2 (E.D. Cal. Feb. 12, 2020). "Although relief under the statute is commonly referred to as 'compassionate release,' such relief is not limited to immediate release, but includes a reduction in sentence." United States v. Marks, No. 03-cr-06033-L, 2020 WL 1908911, at *3 n.3 (W.D.N.Y. Apr. 20, 2020).

"Compassionate release is governed by 18 U.S.C. § 3582(c)." Willis, 382 F. Supp. 3d at 1187. The FSA modified Section 3582(c)(1)(A)(i) to allow for compassionate release when three requirements are met: "First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. Second, a district court may grant compassionate release only if 'extraordinary and compelling reasons warrant such a reduction' and 'such reduction is consistent with applicable policy statements issued by the Sentencing Commission.' Third, the district court must also consider 'the factors set forth in Section 3553(a) to the extent they are applicable.'" United States v. Rodriguez, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019) (quoting 18 U.S.C. § 3582(c)(1)(A)(i); see 18 U.S.C. § 3553(a) ("Section 3553(a)"). The FSA "grants broad discretion to the district courts in providing relief[.]" Jones v. United States, No. 4:98-cr-10-01, 2020 WL 219311, at *3 (E.D. Va. Jan. 6, 2020).

## IV. DISCUSSION

### A. Exhaustion of Administrative Remedies

The Court "may entertain an inmate's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) only (1) 'after he has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion' on his behalf or (2) after 'the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.'" United States v. Cooper, No. 2:14-cr-00228-JAD-CWH, 2020 WL 2064066, at *2 (D. Nev. Apr. 29, 2020) (alterations omitted) (quoting 18 U.S.C. § 3582(c)(1)(A)). In addition, "[e]xhaustion occurs when the BOP denies a defendant's application[.]" United States v. Mondaca, No. 89-cr-00655-DMS, 2020 WL 1029024, at *2 (S.D. Cal. Mar. 3, 2020) (citation omitted).

Here, defendant contends that he has exhausted his administrative remedies, ostensibly because he has received no response to his request for compassionate release, which was filed more than 30 days before the filing of this motion. Reply at 3. The government appears to concede that defendant has exhausted his administrative remedies. Accordingly, the Court finds that defendant has satisfied the exhaustion requirement.

### B. Extraordinary and Compelling Reasons

Section 3582(c) "provides a path for defendants in 'extraordinary and compelling circumstances' to be released from prison early." Rodriguez, 424 F. Supp. 3d at 681 (quoting 18 U.S.C. § 3582(c)(1)(A)). "Congress provided no statutory definition of 'extraordinary and compelling reasons.'" United States v. Aruda, 993 F.3d 797, at *3 (9th Cir. 2021). Instead, Congress tasked the Sentencing Commission with "promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A)," including "what should be considered extraordinary and compelling reasons for sentence reduction[.]" 28 U.S.C. § 994(t).

The Sentencing Commission issued a policy statement regarding "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)" at U.S.S.G. § 1B1.13. However, this policy statement pre-dated the FSA, and the Ninth Circuit has now held that it is not an "applicable policy statement[]" under Section 3582. Aruda, 993 F.3d at *3; see 18 U.S.C. § 3582(c)(1)(A)(i). In so doing, the Ninth Circuit cited approvingly to the Fourth Circuit Court of Appeals' conclusion that, in the absence of an applicable policy statement, "district courts are 'empowered … to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" United States v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020) (quoting United States v. Brooker, 976 F.3d 228, 234–37 (2d Cir. 2020)) (alteration and emphasis in original). Nevertheless, the Ninth Circuit advised that, although not binding, "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant[.]" Aruda, 993 F.3d at *4.

Defendant argues his having contracted COVID-19, the lingering health effects from that illness, the threat of re-infection, the isolation to which inmates are subjected as a preventative measure against the spread of COVID-19, his age and race, and his underlying health conditions constitute extraordinary and compelling reasons for release. Mot. at 2–3, 11, 14. Defendant expresses concern that, although he has recovered from his infection with COVID-19, "he will likely suffer long-term damage that will make the virus even more dangerous the second time around." Id. at 10–11. Furthermore, defendant argues that vaccination does not eliminate all risk of COVID-19 infection, particularly considering the threat of variant strands of SARS-CoV-2. Reply at 8–9.

The government responds that COVID-19 alone cannot constitute an extraordinary and compelling circumstance, and that because defendant has been fully vaccinated, any risks related to his underlying health conditions are significantly mitigated. Opp. at 15–16.

On the one hand, defendant's underlying health conditions and age put him at a higher risk for serious illness from COVID-19. See CDC, COVID-19: People with Certain Medical

Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited April 28, 2021) (type II diabetes and (possibly) hypertension can increase the risk of severe illness from COVID-19; older adults are more likely to become severely ill from COVID-19). Courts have found, in certain circumstances, that these risk factors, combined with the threat of COVID-19 infection, give rise to extraordinary and compelling reasons for release. See, e.g., United States v. Rodriguez, 451 F. Supp. 3d 392, 394 (E.D. Pa. 2020) (finding conditions including diabetes and high blood pressure, in combination with threat of COVID-19, constituted extraordinary and compelling circumstances). Furthermore, while the CDC does observe that racial and ethnic minorities are at increased risk from COVID-19, it appears this increased risk is largely a function of increased exposure to the SARS-CoV-2 virus, not necessarily increased risk once infected. See CDC, COVID-19: Health Equity Considerations and Racial and Ethnic Minority Groups, https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html (last visited April 28, 2021) (listing discrimination; healthcare access and use; occupation; education, income and wealth gaps; and housing as factors that put racial and ethnic minorities at increased risk of contracting and becoming severely ill from COVID-19). Accordingly, defendant's race does not increase his likelihood of severe illness in this case, because the social factors that increase the risk of exposure for racial and ethnic minorities are not present in prison.

On the other hand, defendant has already been infected, apparently with no symptoms. He has also received a full vaccination. Vaccines have proven highly effective in preventing COVID-19 illness, and other courts have found that defendants fail to establish extraordinary and compelling reasons for release when they have received a vaccination, notwithstanding underlying health conditions that otherwise might have posed an increased risk of severe illness from the virus. See United States v. Del Rosario Martinez, No. 19-cr-5218-MMA, 2021 WL 956158, at *3 (S.D. Cal. Mar. 10, 2021) ("[T]he Court agrees with other district courts that Defendant's vaccination significantly mitigates the risk that she will contract COVID-19, much less become seriously ill." (quotation and alteration omitted)); United States v. Grummer, No. 08-cr-4402-DMS, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) ("Although Defendant suffers from several chronic medical conditions, his vaccination significantly mitigates the risk that he will contract COVID-19."); United States v. Ballenger, No. CR 16-5535 BHS, 2021 WL 308814, at *5 (W.D. Wash. Jan. 29, 2021) ("[B]ecause [defendant] has already been infected and vaccinated, his chronic medical conditions alone do not amount to an extraordinary and compelling reason to warrant compassionate release."). The Court therefore concludes that

defendant's vaccination significantly mitigates his risk of severe illness from COVID-19, notwithstanding his underlying health conditions, age, race, and any threat of re-infection.[2]

Additionally, the Court acknowledges that the efficacy of currently available COVID-19 vaccines against SARS-CoV-2 variants continues to be studied, and that it is possible that new, more resistant variants will emerge. Nonetheless, according to the CDC, "studies suggest that antibodies generated through vaccination with currently authorized vaccines recognize" the five variants known in the United States. CDC, COVID-19: About Variants of the Virus that Causes COVID-19, https://www.cdc.gov/coronavirus/2019-ncov/transmission/variant.html (last visited April 28, 2021). As such, the presence of these variants does not alter the Court's conclusion that defendant's vaccination significantly mitigates his risk of contracting severe COVID-19.

Finally, defendant's lingering COVID-19 symptoms and his temporary isolation as a result of the BOP's efforts to stem the spread of the disease at FCI Victorville Medium I do not give rise to extraordinary and compelling circumstances. See United States v. Butov, No. CR 16-226 RSM, 2020 WL 5910063, at *5 (W.D. Wash. Oct. 6, 2020) (no extraordinary and compelling circumstances where defendant suffered from "stress, anxiety, and chronic pain"); United States v. Adkins, No. 19-cr-00651-BAS-1, 2020 WL 3058097, at *2 (S.D. Cal. June 9, 2020) ("[M]ental health problems exacerbated by anxiety over COVID-19 is insufficient to rise to the level of 'extraordinary and compelling' circumstances.").

Accordingly, defendant has failed to establish extraordinary and compelling reasons for release.

**C. Consistency with Section 3553(a) Factors**

To the extent that defendant has otherwise satisfied Section 3582(c)'s requirements, the Court must further "consider the factors set forth in section 3553(a) to the extent they are applicable[.]" United States v. Redd, No. 1:97-cr-00006-AJT, 2020 WL 1248493, at *8 (E.D. Va. Mar. 16, 2020). These factors include: "the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed; the kinds of

---

[2] The Court acknowledges that, as defendant has argued, some courts have found that the threat of re-infection with COVID-19, combined with underlying health concerns, can constitute extraordinary and compelling reasons for release. See, e.g., United States v. Watson, No. 3:18-cr-00025-MMD-CLB-1, 2020 WL 4251802, at *2 (D. Nev. July 22, 2020). However, these cases are distinguishable because the defendants there had not received COVID-19 vaccinations.

sentences available; the kinds of sentence and the sentencing range established in the Guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims." United States v. Carty, 520 F.3d 984, 991 (9th Cir. 2008) (*en banc*) (citing 18 U.S.C. § 3553(a)(1)–(7)).

Defendant contends that his offense is non-violent and one with no direct victim. Reply at 10. He further contends that his prior convictions largely occurred in the 1990s and early 2000s, and that, in any event, he does not pose a danger to the community because he will be deported. Id. at 10–11. Defendant argues he will not return to the United States, despite his history of illegal reentry, because his current sentence is longer than he can tolerate, and he is afraid of contracting COVID-19 in a United States prison. Id. at 11. Defendant further contends his age and underlying conditions weigh in favor of granting release. Id. at 12. Defendant argues the sentence imposed is unnecessary because serving it has become more onerous in light of COVID-19. Id. Finally, defendant contends he has already completed a significant portion of his sentence and, in any event, deportation is a severe punishment. Id. at 12–13.

The government responds that the facts of the case and defendant's lengthy criminal history weigh against release. Opp. at 22. Furthermore, the government contends the Court already considered mitigating factors in imposing a sentence below the guideline range. Id. If defendant's motion were granted, he would serve roughly 26 months' imprisonment, which is below both the initial sentencing guidelines and the reduced sentencing guidelines applied by the Court. Id. at 24. Finally, the government argues that defendant remains a danger to the community. Id. at 17. The government notes defendant's lengthy criminal history, including domestic violence, his repeated violations of parole or supervised release, and, significantly, his repeated illegal reentries to the United States. Id. at 18–19.

First, the nature and circumstances of the offense and defendant's history and characteristics weigh against release. Although a conviction under Section 1326 is not necessarily a conviction for a violent crime, in this case, the prosecution—both in its information and plea agreement—relied on defendant's prior felony convictions to convict him of violating Section 1326(b)(1) and to impose the sentencing enhancement afforded by that section. As such, defendant's conviction under Section 1326(b)(1) indicates he is a danger to the community. Furthermore, it remains the case that his offense here was one of many crimes committed by defendant, often while on supervised release or probation. And although defendant is now 61 years old, he committed several offenses, including the crime of conviction here, just three years ago. Finally, defendant's sentence already reflects several downward adjustments from the initial sentencing guideline range, and serving only a portion of this sentence would be insufficient.

Accordingly, the Court finds that early release would be inconsistent with the factors enumerated in Section 3553(a).

## V.  CONCLUSION

In accordance with the foregoing, the Court **DENIES** defendant's motion for compassionate release.

IT IS SO ORDERED.

|  | 00 : 00 |
|---|---|
| Initials of Deputy Clerk | CMJ |